UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| JEFFREY SCOTT DEPENBROCK,<br><br>Petitioner,<br>v.<br><br>D.W. NEVEN, et al.,<br><br>Respondents. | Case No. 2:12-cv-01327-RFB-CWH<br><br>ORDER |

This counseled second-amended 28 U.S.C. § 2254 habeas petition by petitioner Jeffrey Scott Depenbrock is before the court for adjudication on the merits (ECF No. 39).

I. **Background & Procedural History**

On July 12, 2007, Depenbrock pleaded guilty in state case no. C235011 to possession of credit or debit card without cardholder's consent (exhibit 9).[1] He also pleaded guilty to possession or sale of document or personal identifying information to establish false status or identity in case no. C234564. *Id*. The State agreed to dismiss two other cases and had no objection to Depenbrock's release on his own recognizance after entry of the plea. *Id*. Pursuant to the guilty plea the parties stipulated to a 5 to 20-year sentence under the small habitual criminal statute; however, if Depenbrock failed to appear for sentencing, the stipulated sentence would be life with the possibility of parole after ten years. *Id.*; Exh. 12. On August 8, 2007, Depenbrock failed to appear

---

[1] Exhibits referenced in this order are exhibits to respondents' motion to dismiss, ECF No. 15, and are found at ECF Nos. 16-20.

1

for sentencing, and a bench warrant issued for his arrest. Exh. 10. After his arrest, the state district court imposed the stipulated sentence of ten years to life, and judgment of conviction was entered on February 21, 2008. Exhs. 12, 13.

Depenbrock filed a *pro se* motion for modification of sentence on April 15, 2008, which the state district court denied. Exhs. 14, 17. On December 1, 2008, he filed a proper person state postconviction petition for a writ of habeas corpus. Exh. 22. The state district court denied the petition. Exh. 27. On February 3, 2010, the Nevada Supreme Court affirmed the denial of the petition in part, reversed in part and remanded for an evidentiary hearing on two claims: 1) whether his counsel was ineffective for failing to file a direct appeal; and 2) whether he entered the guilty plea voluntarily, knowingly, and intelligently because Depenbrock alleged that the State did not fulfill the part of the plea agreement that provided for the dismissal of two other cases. Exh. 44. The Nevada Supreme Court also concluded that the district court did not err in denying ten other claims. *Id.*

On remand, the state district court appointed counsel, and Depenbrock filed a counseled supplemental petition. Exhs. 46, 47. The supplemental petition indicated that counsel's research revealed that the two other cases had in fact been dismissed, per the guilty plea agreement. *Id.* The state district court held an evidentiary hearing and subsequently denied the remaining claim. Exhs. 52, 59. The Nevada Supreme Court affirmed the denial of the petition on May 10, 2012, and remittitur issued on June 6, 2012. Exhs. 77, 78.

Depenbrock dispatched his federal habeas petition for mailing on July 24, 2012 (ECF No. 6). Depenbrock's counseled, second-amended petition is before the court for disposition on the merits (ECF No. 39). Respondents have filed an answer, and Depenbrock replied (ECF Nos. 40, 45).

II. **Legal Standards**

A. **Antiterrorism and Effective Death Penalty Act (AEDPA)**

28 U.S.C. § 2254(d), a provision of the Antiterrorism and Effective Death Penalty Act (AEDPA), provides the legal standards for this court's consideration of the petition in this case:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The AEDPA "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693-694 (2002). This Court's ability to grant a writ is limited to cases where "there is no possibility fair-minded jurists could disagree that the state court's decision conflicts with [Supreme Court] precedents." *Harrington v. Richter*, 562 U.S. 86, 102 (2011). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* (citing *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003)); *see also Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (describing the AEDPA standard as "a difficult to meet and highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt") (internal quotation marks and citations omitted).

A state court decision is contrary to clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254, "if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the

3

Supreme Court] and nevertheless arrives at a result different from [the Supreme Court's] precedent." *Lockyer*, 538 U.S. at 73 (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000), and citing *Bell*, 535 U.S. at 694.

A state court decision is an unreasonable application of clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254(d), "if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Lockyer*, 538 U.S. at 74 (quoting *Williams*, 529 U.S. at 413). The "unreasonable application" clause requires the state court decision to be more than incorrect or erroneous; the state court's application of clearly established law must be objectively unreasonable. *Id.* (quoting *Williams*, 529 U.S. at 409).

To the extent that the state court's factual findings are challenged, the "unreasonable determination of fact" clause of § 2254(d)(2) controls on federal habeas review. *E.g., Lambert v. Blodgett*, 393 F.3d 943, 972 (9th Cir.2004). This clause requires that the federal courts "must be particularly deferential" to state court factual determinations. *Id*. The governing standard is not satisfied by a showing merely that the state court finding was "clearly erroneous." 393 F.3d at 973. Rather, AEDPA requires substantially more deference:

> .... [I]n concluding that a state-court finding is unsupported by substantial evidence in the state-court record, it is not enough that we would reverse in similar circumstances if this were an appeal from a district court decision. Rather, we must be convinced that an appellate panel, applying the normal standards of appellate review, could not reasonably conclude that the finding is supported by the record.

*Taylor v. Maddox*, 366 F.3d 992, 1000 (9th Cir.2004); *see also Lambert*, 393 F.3d at 972.

Under 28 U.S.C. § 2254(e)(1), state court factual findings are presumed to be correct unless rebutted by clear and convincing evidence. The petitioner bears the

4

burden of proving by a preponderance of the evidence that he is entitled to habeas relief. *Cullen*, 563 U.S. at 181.

### B. Ineffective Assistance of Counsel

Ineffective assistance of counsel claims are governed by the two-part test announced in *Strickland v. Washington*, 466 U.S. 668 (1984). In *Strickland*, the Supreme Court held that a petitioner claiming ineffective assistance of counsel has the burden of demonstrating that (1) the attorney made errors so serious that he or she was not functioning as the "counsel" guaranteed by the Sixth Amendment, and (2) that the deficient performance prejudiced the defense. *Williams*, 529 U.S. at 390-91 (citing *Strickland*, 466 U.S. at 687). To establish ineffectiveness, the defendant must show that counsel's representation fell below an objective standard of reasonableness. *Id*. To establish prejudice, the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id*. A reasonable probability is "probability sufficient to undermine confidence in the outcome." *Id*. Additionally, any review of the attorney's performance must be "highly deferential" and must adopt counsel's perspective at the time of the challenged conduct, in order to avoid the distorting effects of hindsight. *Strickland*, 466 U.S. at 689. It is the petitioner's burden to overcome the presumption that counsel's actions might be considered sound trial strategy. *Id*.

Ineffective assistance of counsel under *Strickland* requires a showing of deficient performance of counsel resulting in prejudice, "with performance being measured against an objective standard of reasonableness, . . . under prevailing professional norms." *Rompilla v. Beard*, 545 U.S. 374, 380 (2005) (internal quotations and citations omitted). When the ineffective assistance of counsel claim is based on a challenge to a guilty plea, the *Strickland* prejudice prong requires a petitioner to demonstrate "that there is a reasonable probability that, but for counsel's errors, he would not have

5

pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

If the state court has already rejected an ineffective assistance claim, a federal habeas court may only grant relief if that decision was contrary to, or an unreasonable application of, the *Strickland* standard. *See Yarborough v. Gentry*, 540 U.S. 1, 5 (2003). There is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Id.*

The United States Supreme Court has described federal review of a state supreme court's decision on a claim of ineffective assistance of counsel as "doubly deferential." *Cullen*, 563 U.S. at 190 (quoting *Knowles v. Mirzayance*, 129 S.Ct. 1411, 1413 (2009)). The Supreme Court emphasized that: "We take a 'highly deferential' look at counsel's performance . . . through the 'deferential lens of § 2254(d).'" *Id.* at 1403 (internal citations omitted). Moreover, federal habeas review of an ineffective assistance of counsel claim is limited to the record before the state court that adjudicated the claim on the merits. *Cullen*, 563 U.S. at 181-84. The United States Supreme Court has specifically reaffirmed the extensive deference owed to a state court's decision regarding claims of ineffective assistance of counsel:

> Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both "highly deferential," *id.* at 689, 104 S.Ct. 2052; *Lindh v. Murphy*, 521 U.S. 320, 333, n.7, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997), and when the two apply in tandem, review is "doubly" so, *Knowles*, 556 U.S. at ——, 129 S.Ct. at 1420. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. 556 U.S. at ——, 129 S.Ct. at 1420. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard.

*Harrington*, 562 U.S. at 105. "A court considering a claim of ineffective assistance of counsel must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance." *Id.* at 104 (quoting *Strickland*,

466 U.S. at 689). "The question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom." *Id.* (internal quotations and citations omitted).

### C. Instant Petition

Depenbrock alleges that his counsel rendered ineffective assistance in violation of his Fifth, Sixth, and Fourteenth Amendment rights when she failed to consult with him regarding substantive appellate rights and time limitations for filing a direct appeal and when she failed to file a notice of appeal despite Depenbrock's repeated requests (ECF No. 39, pp. 10-14).

The United States Supreme Court has held that the Constitution requires that counsel consult with the defendant about an appeal when there is reason to think either "(1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." *Roe v. Flores-Ortega*, 528 U.S. 470, 480 (2000). In making this determination, courts must consider all the information counsel knew or should have known. The Court noted that "a highly relevant factor in this inquiry will be whether the conviction follows a trial or a guilty plea, both because a guilty plea reduces the scope of potentially appealable issues and because such a plea may indicate that the defendant seeks an end to judicial proceedings." Courts must consider factors such as whether the defendant received the sentence bargained for as part of the plea and whether the plea expressly reserved or waived some or all appeal rights. "Only by considering all relevant factors in a given case can a court properly determine whether a rational defendant would have desired an appeal or that the particular defendant sufficiently demonstrated to counsel an interest in an appeal." *Id.*

In affirming the denial of this claim in the state postconviction petition, the Nevada Supreme Court reasoned:

> At the evidentiary hearing, Depenbrock testified that he called his counsel at least five times and left messages on her voicemail after he was sentenced. When he did not receive a response from her, he sent her a letter asking her to file an appeal, and she responded with a letter stating that it was too late to file a direct appeal. Counsel testified that she was never asked by Depenbrock to file an appeal until she received his letter approximately three months after he was sentenced, at which time she informed him that it was too late to appeal. Counsel stated that she did not receive any voicemail messages from Depenbrock and that she would have filed an appeal if he had asked her to do so. The district court found counsel to be credible and determined that Depenbrock was not denied a direct appeal. We conclude that the district court's findings were based upon substantial evidence and were not clearly wrong, and Depenbrock has failed to show that the district court erred in denying this claim. See *Means v. State*, 120 Nev. 1001, 1012, 103 P.3d 25, 33 (2004) (petitioner bears the burden of proving ineffective assistance); *see also State v. Rincon*, 122 Nev. 1170, 1177,147 P.3d 233, 238 (2006) ("[T]he district court is in the best position to adjudge the credibility of the witnesses and the evidence, and unless this court is left with the definite and firm conviction that a mistake has been committed, this court will not second-guess the trier of fact." (internal quotation marks omitted)).

Exh. 77, pp. 1-2.

At the state district court evidentiary hearing on this claim, Depenbrock testified that after his February 21, 2008 sentencing he made at least five phone calls to the Clark County Public Defender's office trying to reach his counsel in order to file a direct appeal. Exh. 52, pp. 4-8. He stated that he first tried to contact counsel "probably the following week" after he was sentenced. *Id.* at 5. He testified that he spoke to the receptionist and also left voicemails for his counsel. He never received any response to his messages. *Id.* at 6. Depenbrock sent his attorney a letter about May 31, 2008, asking her to file his direct appeal. *Id.* He received a letter back from counsel that stated that it was too late to file a direct appeal, but that she would file a motion to withdraw as counsel so that Depenbrock could file a state postconviction petition. *Id.*

On cross examination, Depenbrock stated that he placed one or two of the five phone calls to counsel more than thirty days after he was sentenced. *Id.* at 7.

The state district attorney asked:

8

> Isn't it true in this [May 31] letter you don't state to [plea counsel] you know, I've tried to call you several times and I haven't heard back from you? It doesn't say that in this letter does it?
>
> Depenbrock: No.
>
> State: It only says that you wish to file an appeal in this case. And you state some of the reasons that you believe that you have an appeal.
>
> Depenbrock: Yeah. Sure.
>
> State: And isn't it true that you received a response from Ms. Diefenbach on June 10th?
>
> Depenbrock: Yeah.
>
> State: So that was a little over a week after you sent this letter? And she informed you that the time had passed 'cause it'd been several months -
> ….
>
> Depenbrock: Correct.
>
> State: And she also then complied with your additional request that you be provided your case file; isn't that right?
>
> Depenbrock: Yeah. Correct.

*Id.* at 7-8.

Depenbrock's plea counsel also testified. *Id.* at 9-14. She stated that at the conclusion of the sentencing hearing, Depenbrock commented "I will not do life." *Id.* at 11. She testified that she did not understand what he meant and thought perhaps he meant he was going to take his own life. *Id.* Depenbrock did not say anything that made counsel think he wanted to file a direct appeal. *Id.* Counsel had no contact with Depenbrock within the first thirty days after he was sentenced. She checks her voicemail several times a day, every day, and had no recollection of any voicemail messages from Depenbrock. The first time she heard from Depenbrock was when she received a detailed letter from him in early June asking her to start the appeal process, suggesting possible claims, and directing her to certain case law. *Id.* at 12. Within a week she responded in writing and told Depenbrock that the deadline to file an appeal

9

had expired and suggested that her office withdraw as his attorney so that he could seek postconviction relief. *Id.* Counsel testified that she "absolutely" would have filed a direct appeal if Depenbrock had asked her to do so and that she recalled no other time, other than the May 31 letter, that he asked her to file a direct appeal. *Id.* at 13. On cross examination, counsel stated that she did not send Depenbrock a closure-of-file letter because it was not her practice to do so as a public defender. *Id.*

At the evidentiary hearing, the state district court supplemented the record with letters from Depenbrock. *Id.* at 14. The court noted that Depenbrock had filed "quite a bit with the Court," but that he made no mention in any of the correspondence or filings that he had ever requested or intended to pursue a direct appeal.

In its order denying the petition, the state district court credited Depenbrock's plea counsel's testimony that Depenbrock never asked her to file a direct appeal and that she saw no nonfrivolous issues to raise on appeal. Exh. 59, p. 4. The court explained that it reviewed Depenbrock's letters and found that Depenbrock did not send a letter to his counsel until May 31, 2008, more than two months after the deadline to file his notice of appeal had passed. *Id.* at 5. The court found that Depenbrock was not denied a direct appeal. *Id.* Finally, the court stated that the second remanded claim was belied by the record because the State complied with the plea negotiations and two other cases were dismissed on July 14, 2008 and November 6, 2008 pursuant to the plea agreement. *Id.*

Having reviewed the state-court record, this court determines that Depenbrock has failed to demonstrate that the Nevada Supreme Court's decision affirming the denial of this claim was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the U.S. Supreme Court, or was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d). Accordingly, federal habeas relief is denied as to ground 1.

10

The petition, therefore, is denied in its entirety.

**D. Certificate of Appealability**

This is a final order adverse to the petitioner. As such, Rule 11 of the Rules Governing Section 2254 Cases requires this court to issue or deny a certificate of appealability (COA). Accordingly, the court has *sua sponte* evaluated the claims within the petition for suitability for the issuance of a COA. *See* 28 U.S.C. § 2253(c); *Turner v. Calderon*, 281 F.3d 851, 864-65 (9th Cir. 2002).

Pursuant to 28 U.S.C. § 2253(c)(2), a COA may issue only when the petitioner "has made a substantial showing of the denial of a constitutional right." With respect to claims rejected on the merits, a petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (citing *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983)). For procedural rulings, a COA will issue only if reasonable jurists could debate (1) whether the petition states a valid claim of the denial of a constitutional right and (2) whether the court's procedural ruling was correct. *Id*.

Having reviewed its determinations and ruling in adjudicating Depenbrock's petition, the court finds that reasonable jurists would not find its determination of any grounds to be debatable pursuant to S*lack*. The court therefore declines to issue a certificate of appealability.

**E. Conclusion**

**IT IS THEREFORE ORDERED** that the second-amended petition (ECF No. 39) is **DENIED** in its entirety.

**IT IS FURTHER ORDERED** that a certificate of appealability is **DENIED**.

**IT IS FURTHER ORDERED** that the Clerk shall enter judgment accordingly and close this case.

**DATED**: March 13, 2018.

                                                    RICHARD F. BOULWARE, II
                                                    UNITED STATES DISTRICT JUDGE